United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Oakfabco, Inc.,<br><br>Debtor. | Bankruptcy No. 15 B 27062<br><br>Chapter 11 |

# AMENDED
# OPINION ON NEW ENGLAND REINSURANCE COMPANY'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 369]

Debtor moved for approval of a settlement with New England Reinsurance Company ("New England") (Dkt. No. 67) which was objected to by the Asbestos Claimants' Committee (Dkt. No. 268).

New England then moved for partial summary judgment, seeking determination that an insurance binder was terminated and superseded by New England Policy No. 688013 (the "Policy") and that the insurance binder does not provide a separate limit of liability independent from the Policy to Oakfabco, Inc. ("Debtor"). If it could succeed, that would tend to support the settlement. However, for reasons stated below, New England's motion has been denied by prior order. Original opinion (Dkt. #459 is withdrawn).

## BACKGROUND

This Chapter 11 case was filed by Debtor Oakfabco, Inc., a company that made boilers that were sold nationwide. Though operations ceased, the consequences of asbestos use in manufacture posed issues as it became apparent that insurance to protect against resulting asbestos claims was inadequate to cover those claims.

On September 11, 2015, the Debtor filed a Motion for the Court to approve a settlement agreement negotiated between Debtor and New England to settle Debtor's claims against available insurance issued by that company. (*See* Dkt. No. 67.) While New England maintains that applicable liability limits had been exhausted, the Debtor

claimed an entitlement to additional coverage under relevant documents. Debtor agreed to settle all its possible claims against New England for $3 million. (*Id.* at 8.)

The Asbestos Claimants' Committee ("ACC") appointed by the United States Trustee objected to the proposed settlement. (Dkt. No. 268.) The Objection contended that although New England had already paid out $10 million on account of Asbestos claims against the Debtor, it was possible that New England owed an additional $20 million in coverage, so the $3 million offer was too small to warrant approval.

The ACC Objection is premised on two arguments. First, the ACC argued that a certain Renewal Certificate that was found to have been issued by New England would provide not only an additional $10 million aggregate limit, but also an additional $10 million per occurrence limit. Second, ACC argued that New England owes $10 million under an applicable Binder for a two-month "stub period" of March 2, 1985 to May 1, 1985. (*Id.* at 14–15.) ACC argued that the Binder created such a two-month "stub period" because the Renewal Certificate to the policy "fails to say it terminates or superseded the Binder" and no other policy or certificate was delivered to impair the stub period.

The dispute boils down to determining whether the possible available insurance coverage has been exhausted or whether an additional $20 million in coverage exists or some lesser amount. Though the settlement offer was increased to $3.5 million, the parties could not agree. The pending Motion for partial summary judgment was filed by New England to assist in the Court's analysis as to whether the settlement between the Debtor and New England should be approved.

## JURISDICTION

Jurisdiction lies under 28 U.S.C. § 157 and § 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

This action poses issues under contract and statute that would not usually be susceptible to entry of final judgment by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462 (2011).

The Motion was supported by a detailed declaration. The parties proposed what they asserted to be undisputed facts applicable to resolution of the instant Motion, and no dispute has been raised to the facts asserted by either party, and those facts are therefore uncontested.

Parties who initially mentioned some possible objections later all agreed in open court that for purposes of this Motion there are no objections to any proposed facts. (*See* Tr., Dec. 20, 2016.)

## UNCONTESTED FACTS

1. On August 7, 2015, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, in the United States Bankruptcy Court for the Northern District of Illinois, which was assigned bankruptcy case No. 15-27062. (*See* ACC's L.R. 7056-2(A) Am. Resp., Dkt. No. 359 ["ACC's Am. Resp."], at ¶ 1.)

2. The Debtor, Oakfabco, Inc. is an Illinois corporation that was formerly known as Kewanee Boiler Corporation. (ACC's Am. Resp., at ¶ 2.)

3. The Debtor continues in the management of its property as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. (ACC's Am. Resp., at ¶ 3.)

4. On August 27, 2015, the United States Trustee appointed the asbestos claimants' committee ("ACC") pursuant to § 1102(a)(l) of the Bankruptcy Code. (ACC's Am. Resp., at ¶ 4.)

5. On October 26, 2016, the Bankruptcy Court entered a scheduling order for New England to file a Motion for partial Summary Judgment "as to the maximum

possible recovery by Debtor . . . together with all required supporting materials." (ACC's Am. Resp., at ¶ 5.)

6. New England issued policy No. 688013 (the "Policy") to Kewanee Boiler Corporation. (ACC's Am. Resp., at ¶ 6.)

7. The Policy's declarations page identifies the Policy Period as extending "From: March 1, 1983 To: March 1, 1984." (*See* ACC's Am. Resp., at ¶ 7; Parker Decl., Ex. 1, Declarations, Item 2.)

8. Montgomery & Collins, Inc. of Illinois, as general agent for New England and as its surplus lines broker, issued an insurance binder dated March 6, 1984 (the "Binder"). New England does not allege that it objected to issuance of the Binder. (NE Resp., ¶ 5.) (*See* ACC's Am. Resp., at ¶ 8; New England L.R. 7056-1(C) Resp., Dkt. No. 381 ["NE Resp."], at ¶¶ 3, 4, 5.)

9. The Binder identifies the Insurer as New England Reinsurance Corp. and references Policy/Certificate No(s) 688013. (ACC's Am. Resp., at ¶ 9.)

10. The Binder identifies the Binder Period as "From: March 1, 1984 To: May 1, 1985" and states that "This binder will be terminated and superseded upon delivery of formal policy(ies)/certificate(s) issued to replace it." (ACC's Am. Resp., at ¶ 10.)

11. The Binder identifies the "Policy Period" as "From: March 1, 1984 To: March 1, 1985". (ACC's Am. Resp., at ¶ 11.)

12. The Binder states: "Forms applicable are subject in all respects to the terms, conditions and limitations of the policy(ies)/certificate(s) in current use by the insurer(s) unless otherwise specified." (*See* ACC's Am. Resp., at ¶ 12.)

13. Under "Conditions" the Binder provides for payment of a premium to Montgomery & Collins, Inc. of Illinois. Debtor paid the premium set forth in the Binder. (*See* NE Resp., ¶ 6; Parker Decl. Ex. 2.)

4

14. Under "Other Conditions" the Binder states "Renewal continuation of present policy." (ACC's Am. Resp., at ¶ 13.)

15. New England issued and delivered a document titled "RENEWAL CERTIFICATE" to the Policy (the "Renewal Certificate"). (*See* ACC's Am. Resp., at ¶ 14; Parker Decl. Ex. 1.).

16. The Renewal Certificate states as follows:

> In consideration of an Additional Premium of $17,650., it is agreed that this policy is extended to expire March 1, 1985.
>
> It is further agreed that the Company's liability, as stated as the annual aggregate limit in Item 3-II of the Declarations, shall apply as an Additional Limit during the Policy Period 3/1/84 to 3/1/85 for those coverages that are subject to an annual aggregate Limit of Liability.
>
> All other terms and conditions remain unchanged.
>
> Policy No: 688013
>
> Issued to: Kewanee Boiler Corporation

(*See* ACC's Am. Resp., at ¶ 15; Parker Decl. Ex. 1.)

17. Pacific Employers Insurance Company issued an Excess Blanket Catastrophe Liability Policy, Policy No. XMO 023415, to the Debtor for the Policy Period March 1, 1985 to March 1, 1986 (the "PEIC Policy"). (NE Resp., at ¶ 7.)

18. The PEIC Policy follows form with respect to the scheduled underlying products liability policy issued by Columbia Casualty Co., Policy No. CCP 365 44 23 (the "Underlying CNA Policy"). (NE Resp., at ¶ 8.)

19. The Asbestos Exclusion Endorsement to the Underlying CNA Policy expressly excludes all coverage for asbestos injuries. (NE Resp., at ¶ 9.)

20. As of August 7, 2015, the date of the Debtor's bankruptcy filing, there were approximately 3,400 active asbestos claims and over 30,000 inactive asbestos claims against the Debtor. (NE Resp., at ¶ 1.)

21. A single judgment against the Debtor could exceed $100 million. *See, e.g., Assenzio, et al. v. Burnham, et al.* (N.Y. Sup. Ct.; Index Nos. 190008/12, 190026/12, 190200/12, 190183/12, 190184/12) ($190 million jury verdict entered in favor of five defendants); *see also* Law360.Com, a LexisNexis Company: NY Jury Awards $190M Over Asbestos Injuries, Deaths, July 24, 2013 (available at *http://www.law360.com/articles/459738/nytjury-awards-190m-over-asbestos-injuries-deaths*). (NE Resp., at ¶ 2.)

## REQUEST FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56(a), Fed. R. Civ. P., made applicable in bankruptcy by Fed. R. Bankr. P. 7056, a party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law." *Berg v. N.Y. Life Ins. Co.*, 831 F.3d 426, 428 (7th Cir. 2016) (citing Fed. R. Civ. P. 56(a)).

In determining whether there is a "genuine" dispute about a material fact, the court will consider "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). "In the light most favorable" simply means that summary judgment is not appropriate if the

court must "choose between competing inferences." *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 922 (7th Cir. 1996); *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The choice between reasonable inferences from facts is a jury function. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court therefore has "one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires trial." *Egan v. Freedom Bank*, 659 F.3d 639, 643 (7th Cir. 2011) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## **DISCUSSION**

In this case, the parties' ultimate dispute concerns the maximum possible recovery by the Debtor in its coverage exhaustion dispute with New England. The ACC has argued that the Renewal Certificate provides additional liability limits of $10 million from March 1, 1984 to March 2, 1985, and that the Binder provides additional $10 million coverage limits for the two-month stub period not covered by the Renewal Certificate (March 2, 1985 to May 1, 1985).

New England moves for partial summary judgment on the issue of whether the Binder could provide the Debtor with additional coverage for the stub period not covered by the Renewal Certificate. (*See* Motion, at 2.) Specifically, New England seeks a determination that the insurance binder was terminated and superseded by the Renewal Certificate and the Policy and does not provide additional insurance coverage to the Debtor. New England argues that the Binder clearly references the Policy and specifies that it is "terminated and superseded upon delivery of formal policy(ies)/certificate(s) issued to replace it." Based on these terms, New England

7

asserts that there can be no dispute that the Binder was terminated and superseded by the Policy when the Renewal Certificate was issued.

ACC contends that since Binder provides for a longer coverage period and Renewal Certificate makes no express reference to the Binder terms, the Binder was not clearly superseded or terminated upon issuance of the Renewal Certificate. ACC argues that the language relied on by New England is ambiguous, and could reasonably be interpreted as providing that the Binder will be terminated and superseded upon issuance of one *or more* formal documents. Since no other formal documents were issued to replace the Binder, the Binder could obligate New England to provide additional $10 million coverage limits for the stub period beyond the policy period stated in the Renewal Certificate.

Both parties rely on Illinois law and presumably agree that Illinois law governs. "A contract of insurance is established if one of the parties to such a contract proposes to be insured and the other party agrees to insure, and the subject, the amount, and the rate of insurance are ascertained or understood and the premium paid if demanded." *Zannini v. Reliance Ins. Co. of Illinois*, 590 N.E.2d 457, 464 (Ill. 1992) (internal quotation marks and citations omitted). Such a contract may be oral, and basic terms agreed can be enforceable as preliminarily agreed before a formal policy is issued. *See id.* at 464–65.

"An insurance binder 'is in the nature of temporary insurance, and insurance coverage by its use is effected at once.'" *Id.* at 464 (citation omitted). It is an independent contract separate from the actual policy, which is intended to provide temporary protection until issuance of the policy by the insurer or rejection. *See Ins. Co. of Illinois v. Brown*, 734 N.E.2d 964, 969 (Ill. App. Ct. 2000).

In interpreting a contract under Illinois law, "the paramount objective is to give effect to the intent of the parties as expressed by the terms of the agreement." *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 522 N.E.2d 758, 764 (Ill. App. Ct. 1988). Where the terms are clear and unambiguous, they must be

8

given their plain and ordinary meaning and enforced as written, unless such terms violate public policy. *See Berg v. N.Y. Life Ins. Co.*, 831 F.3d 426, 429 (7th Cir. 2016) (citing *Am. Nat. Fire Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 796 N.E.2d 1133, 1141 (Ill. App. Ct. 2003)). On the other hand, if the terms are susceptible of more than one reasonable meaning, an ambiguity exists and it will generally be construed against the insurer. *See id.* (citing *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (2005)).

In this case, the Binder specifies that it will be "terminated and superseded upon delivery of formal policy(ies)/certificate(s) issued to replace it." However, those terms do not establish that the Renewal Certificate was issued to replace the insurance terms described in the Binder. The Binder separately lists a "Binder Period" and a "Policy Period," and conditions insurance coverage upon payment of a premium 30 days after the effective date of the Binder, and upon "renewal continuation" of the present policy, as follows:

> 4. Binder Period From: March 1, 1984   To: May 1, 1985 ... This binder will be terminated and superseded upon delivery of formal policy(ies)/certificate(s) issued to replace it.
>
> 10. Policy Period From: March 1, 1984 To: March 1, 1985
>
> \*\*\*
>
> 11. Forms applicable are subject in all respects to the terms, conditions and limitations of the policy(ies)/certificate(s) in current use by the insurer(s) unless otherwise specified.
>
> 12. Conditions: $ [redacted] premium is due and payable to M&C within 30 days of the BINDER effective date. If premium is not paid within the specified time, the insurance evidenced by this binder will automatically terminate and pro rata premium shall be due and payable.
>
> 13. Other conditions: Renewal continuation of present policy

(*See* Parker Decl., Ex. 2, ¶¶ 4, 10, 12, 13.)

The Renewal Certificate, in turn, states that in consideration of "Additional Premium of $17,650[]", it is agreed that this policy is extended to expire March 1, 1985", which is consistent with the "Policy Period" identified in the Binder but not the "Binder Period." The Renewal Certificate also states that annual liability limit in Item 3-II would apply as an as an "Additional Limit during the Policy Period 3/1/84 to 3/1/85 for those coverages that are subject to an annual aggregate Limit of Liability." All other terms and conditions are specified to remain unchanged. (*See* Parker Decl., Ex. 1, Renewal Policy.)

As noted by the ACC, the statement as to supersession and termination of the Binder that is relied on by New England is inconclusive. The Binder merely provides that "This binder will be terminated and superseded upon delivery of formal policy(ies)/certificate(s) issued to replace it." That clause does not establish that the Renewal Certificate was such "policy(ies)/certificate(s) issued to replace it." And since the terms described in the Renewal Certificate differ from those set forth in the Binder, the availability of additional coverage by reference to the Binder cannot be refuted at this stage. *See Berg*, 831 F.3d at 429–30 (noting that ambiguities in a policy are generally construed against the insurer, and policy provisions limiting or excluding coverage generally read narrowly and applied only where the terms are clear, definite and specific) (citing *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005).

New England argues that "the Binder is not an insurance policy, contains no terms or conditions regarding coverage, and cannot provide coverage independent of the insurance policy." It therefore claims that "[t]here can be no dispute that the Binder was terminated and superseded by the Policy when the Renewal Certificate issued." However, the terms in the Binder and the Renewal Certificate are ambiguous, even if the ACC's interpretation of the Binder as providing additional coverage for a two-month stub period is similarly inconclusive based on the evidence presented. *See Berg*, 831 F.3d at 430 ("an alternate reading does not have to be the best one: for ambiguity to

10

exist, there need only be more than one reasonable interpretation of the provision"). Nothing in the Renewal Certificate suggests that it was issued to replace the Binder, and the language regarding termination and supersession is ambiguous as to the type and number of documents intended. (*See* Parker Decl., Ex. 2, ¶ 4 ("This Binder will be terminated and superseded upon delivery of formal **policy(ies)/certificate(s) issued to replace it**") (emphasis provided).)

New England argues that a binder is intended to provide temporary protection until issuance pending full investigation by the insurer and until a formal policy or certificate is issued. (Motion, at 9 (citing *Insurance Co. of Ill. v. Brown*, 734 N.E.2D 964, 969 (Ill. App. Ct. 2000)).) This argument, however, presumes that the Renewal Certificate was issued to replace the Binder, and ignores the inconsistencies between the two documents. If New England's reading of these documents were correct, separate reference to the Binder Period and the Policy Period, and the terms and conditions identified in the Binder would be surplusage. *Cf. Berg*, 831 F.3d at 430 (noting that Illinois courts "will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous." (quoting *Pekin Ins. Co. v. Wilson*, 909 N.E.2d 379, 387 (Ill. App. Ct. 2009)). These ambiguities and the existence of competing reasonable inferences based on the terms of the Binder and the Renewal Certificate require denial of New England's Motion for partial Summary Judgment. *See, e.g., Cont'l Cas. Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005) (noting the general rule in Illinois law that "questions of contractual ambiguity [are given] to the trier of fact, together with the evidence necessary to resolve them").

Even if the Binder itself could not provide coverage independent of the insurance policy, it could potentially serve as evidence of the parties understanding of ambiguous terms included in the Renewal Certificate and the Policy, such as "Additional Premium" and "Additional Coverage" (*see* Parker Decl., Ex. 1, Renewal Certificate, *see also id.*, Endorsement # 4) and how they relate to the Binder Period, if at all.

11

To sum up, the following issues must be decided by trial if not settled: Was the Renewal Certificate a certificate issued to replace the Binder or were other certificate(s)/policy(ies) forthcoming? How were the terms set forth in the Binder incorporated into the Policy, if at all? Could the Binder provide for additional coverage during the two-month stub period beyond the one-year extended period described in the Policy, or was it replaced, cancelled or otherwise terminated? These issues pertaining to the Debtor's maximum potential recovery in its coverage dispute with New England prevent summary judgment.

For the foregoing reasons, New England's Motion for partial Summary Judgment has been denied by prior separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 29th day of June, 2017

JUN 29 2017